## MARBLEHEAD MUTUAL FIRE INSURANCE COMPANY *vs.* ORISON UNDERWOOD.

The delay of a mutual fire insurance company, for a time not unreasonable, to make an assessment, does not invalidate the assessment, notwithstanding the provision of the Rev. Sts. *c.* 37, § 31, that " if any member shall have a just claim on the corporation, founded on a policy issued by them, exceeding the amount of their existing funds, exclusive of the deposit notes given by the members, the directors shall forthwith " lay an assessment.

The question whether the books of a mutual fire insurance company furnish sufficient data for a correct assessment is a question for the jury.

An assessment made by a mutual fire insurance company in good faith, upon correct principles, and substantially correct, is binding, notwithstanding small errors, upon a member who is not affected to a perceptible amount by the errors.

An assessment laid by a mutual fire insurance company is not rendered invalid, by the fact that the proportion between the cash premiums and the deposit notes taken by the company varied at different times, as against a member who suffered no damage thereby.

A member of a mutual fire insurance company is not discharged from his liability on his deposit note for losses already accrued, by the cancellation of his policy by a general corresponding agent of the company, accompanied by a promise to surrender the note, without proving the authority of such agent to surrender the note.

ACTION OF CONTRACT to recover an assessment upon a deposit note signed by the defendant, on receiving a policy from the plaintiffs, dated the 29th of January 1851.

At the trial in the court of common pleas, before *Hoar*, J. there was evidence of the following facts : The plaintiffs were incorporated by *St.* 1848, *c.* 209 ; issued their first policy on the 5th of June 1848 ; on the 15th of May 1849 adopted the *St.* of 1849, *c.* 104, § 2, empowering mutual fire insurance companies to divide their risks into two classes ; on the 17th of June 1850 adopted *St.* 1850, *c.* 279, § 2, empowering such companies to divide their risks into four classes ; and soon after passing the first of these votes, divided their risks into two classes ; and at different times afterwards, commencing with April 6th 1849, and ending with February 1st 1852, met with nine losses in the first class, (of which a schedule was produced,) amounting to $3,854.55.

The first assessment on notes of the first class was laid on the

3d of March 1852, when the company voted " that the premium notes of the first class of the Marblehead M. F. I. Co. be assessed to raise the sum of $5,866, to pay the losses and expenses now owing from said first class from the commencement of the office to the present time ; " and that their secretary and one other " be a committee to apportion the above assessment on said notes, according to the liability on each note for losses and expenses incurred during the time each note has been in the office."

The secretary testified that the only books kept by the com pany were a book of records, a register of losses, books contain- ing copies of applications for insurance, and of policies issued, and a book in which the several agents of the company were charged with assessments intrusted to them for collection ; that the company kept no cash book, nor any book showing the ex- penses of the office ; that they never invested any money, nor kept any bank account, because losses occurred soon after they began to insure ; that their principal expenses were fixed sums, and he or the treasurer had bills for the rest; that, when the committee apportioned the assessment, they had before them no account of the receipts other than that furnished by the register, which stated the cash premiums on each policy, and the book of records, which also showed the salaries of the officers of the company ; and that he knew, at that time, the amount expended for furniture, office rent, salaries, fuel, stationery, &c. ; that the committee assessed the amount of each loss, after adding the pro- portion of expenses belonging to the first class, and deducting the cash received for premiums, upon the notes of the first class which were outstanding at the time of the fire ; and that he knew the assessment was correct.

He also testified that the company had different rates of in- surance in the same class, and that the ratio between the cash premium paid and the notes given varied at different times ; that during the first year, after fixing the rate of premium and the amount of the premium note, they required the insured to advance in cash twenty five per cent. of the premium note ; but since the first year required only three per cent. of the premium

note to be advanced in cash, except when the three per cent. was less than a dollar, in which case they required a dollar to be paid; and the defendant pointed out one instance in the book where the three per cent. amounted to ninety six cents, and the company took two dollars as advance premium; so that, upon examination of the books, it appeared that in some instances the note was four times the amount of the premium, in others sixteen times, in others twenty four times, and in others, being the larger number of cases, thirty three and a third times the amount of the premium.

The defendant put into the case his policy, on the back of which was written, " Cancelled, Feb. 13, 1852." The secretary testified that this indorsement was written by William Pulsifer, who had been the agent of the company to transact their business in Boston ever since their organization; that the policy was also cancelled, as of the same date, on the register of the company; and that it was the custom of the company to cancel on the book all policies sent them by their agents with such indorsements. The defendant introduced evidence that when he surrendered his policy to Pulsifer, Pulsifer agreed to get the note, which was at the plaintiffs' office at Marblehead, and give it up to the defendant, and did not pretend that there was any thing due from the defendant on the note. But there was no evidence that Pulsifer had any authority to cancel notes without payment.

Upon the foregoing testimony, the defendant, not denying that the principle upon which the assessment was made was correct, contended that the plaintiffs could not recover, for the following reasons:

" 1. Because the plaintiffs had failed to comply with the requisitions of § 31 of c. 37 of the Rev. Sts., requiring the directors to make an assessment ' forthwith.' But the court ruled that this objection could not prevail.

" 2. Because the plaintiffs' book furnished no sufficient data for a correct assessment. But the court ruled that this was a question of fact for the jury, and that, if the jury believed that the assessment was made in good faith, upon correct principles,

and was substantially correct, though there might be some small errors, the defendant would be holden, absolute accuracy not being required, if any error would not affect the defendant to a perceptible amount.

" 3. Because the contracts of the company disregarded the principle of mutuality. But the court ruled that, unless it appeared that some damage to the defendant resulted from the failure of the company to take policy notes bearing uniformly the same ratio to the premium paid, the defendant would be holden.

" 4. Because the surrender and cancellation of the defendant's policy, under the circumstances proved, was a virtual cancellation of the note in suit. But the court ruled that the cancelling of the policy would not discharge the note so far as it was already liable for losses ; and that the burden of proof was on the defendant to show that Pulsifer had authority, express or implied, to promise the surrender of the note ; and that he would not be authorized to make such promise, merely by virtue of his authority to act as agent for the company in taking and transmitting policies."

The jury found a verdict for the plaintiffs ; and the defendant alleged exceptions.

*J. M. Keith*, for the defendant.

*G. H. Preston*, for the plaintiffs.

DEWEY, J. We perceive no ground of exception to the ruling of the court upon the construction of that part of Rev. Sts. *c.* 37, § 31, requiring that " if any member shall have a just claim on the corporation, founded on a policy issued by them, exceeding the amount of their then existing funds, exclusive of deposit notes given by the members, the directors shall *forthwith* assess such sum as may be necessary to pay the same, upon the members, in proportion to the amount of their premiums and deposits severally." The term " forthwith," which is the subject of judicial inquiry here, must be reasonably construed. The leading object of the provision cited was to secure prompt action for the benefit of a member who had sustained a loss by fire to an amount

exceeding the available funds of the company, independent of the deposit notes. It is rather directory, than an essential element in the validity of the assessment. Certainly the term is not to be construed strictly, as great practical inconvenience would result therefrom. If the assessment is properly made in every other respect, a delay in making it, for a time not unreasonable, will not vitiate it.

2. The second position taken by the defendant on the trial was that there were no sufficient data for making a correct assessment. This question, it was held, was for the jury, upon the whole evidence; and they were instructed that, if the assessment was made upon correct principles, and was substantially correct, although there might be some small errors, the defendant would be holden to pay the same. This, we think, was proper. This court has heretofore holden that, in making these assessments, due convenience, if not absolute necessity, requires some slight departures from that exactness which would result from making an assessment upon every loss, however insignificant in amount; and that an approximation to an assessment upon the several losses, as they occur, would be sufficient. Hence an assessment, made under a by-law or rule that, as often as some small percentage (named in the rule) upon the deposit notes would be required to meet past losses, though not made upon the first loss, was held a reasonable approximation to the requirements of the statute. *New England Mutual Fire Ins. Co.* v. *Belknap*, 9 Cush. 140.

3. The presiding judge properly ruled that it did not avoid the assessment, that the directors had taken a different proportion between the cash premiums and deposit notes of members of the company, as the terms of insurance, (changes in these proportions having been found expedient in the progress of the institution,) unless it appeared that some damage resulted therefrom to the defendant.

4. The further rulings, as to the alleged cancelling of the policy, the effect of such cancelling, and that the burden of proof was upon the defendant to establish the authority of Pulsifer to

promise the surrender of the note, and that an agency to take and transmit policies would not of itself authorize him to make such promise to surrender the note binding on the company, were, in the opinion of this court, correct.

*Exceptions overruled.*